IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNIVERSAL UNDERWRITERS SERVICE CORP., | ) ) ) | |
| Plaintiff. | ) ) ) | |
| v. | ) ) | Case No. 05-0415-CV-W-GAF |
| MECHANICAL BREAKDOWN PROTECTION, INC., JAMES W. ORR, JR., MARK MULLER, JOHN DOES 1-50 (AGENTS OF MECHANICAL BREAKDOWN PROTECTION, INC.), | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court is a Motion for a Preliminary Injunction filed by the Plaintiff, Universal Underwriters Service Corp. ("Universal"). (Doc. #3). Universal seeks this preliminary injunction pursuant to Fed. R. Civ. P. 65. The Defendants, Mechanical Breakdown Protection, Inc., James W. Orr, Jr., Mark Muller, and John Does 1-50 (collectively "Mechanical"), oppose this Motion arguing that Universal is not entitled to a preliminary injunction because it is unlikely to succeed on the merits of its Lanham Act claim. (Doc. # 8). This Court finds that a balance of the equities entitles Universal to a preliminary injunction enjoining Mechanical from disseminating literally false and misleading statements about the liability of Kansas and Wisconsin automobile dealers under Universal's Vehicle Service Contracts. As such, for reasons set forth more completely below, Universal's Motion for a Preliminary Injunction is GRANTED IN PART.

1

**DISCUSSION**

**I.      Facts**

Universal and Mechanical are competitors in the vehicle service contracts business. (Doc. #4). Vehicle service contracts insure that a consumer need only pay a small deductible for the repair or replacement of parts covered by the contract. Id. These contracts are sold to consumers through automobile dealers. Id. Universal claims that Mechanical is engaging in a "smear campaign" against Universal by disseminating false, misleading and disparaging comments about Universal's Vehicle Service Contracts to automobile dealers. Id. Specifically, Universal alleges that Mechanical is representing to the automobile dealers that sell Universal's Vehicle Service Contracts in Kansas, Wisconsin and Missouri that such automobile dealers are obligors who will be solely liable for claims brought by consumers who have purchased the contracts. (Prelim. Inj. Hr'g). Universal contends that this representation of the automobile dealer's liability under Universal's Vehicle Service Contracts is literally false with respect to dealers in Kansas and Wisconsin and misleading in relation to Missouri dealers. (Prelim. Inj. Hr'g).

In late March 2005, Mechanical's President, James W. Orr ("Orr"), received a copy of Universal's Vehicle Service Contract Application from an automobile dealer in Springfield, Missouri. (Doc. #8). Orr subsequently obtained an additional copy of Universal's Vehicle Service Contract Application from a Missouri car dealership. Id. Copies of both of these applications were attached to Mechanical's Suggestions in Opposition to this Motion and clearly state, "The obligor of this CONTRACT is the dealer selling or leasing the vehicle and issuing the CONTRACT." Id., Attach. A, B.

On April 7, 2005, Orr and Mark Muller, another principal of Mechanical, issued a memorandum ("April 7th memo") to Mechanical's general sales agents[1] instructing the agents to notify automobile dealers of their potential liability under Universal's Vehicle Service Contracts. (Doc. #4). The parties dispute who received the memo. According to Universal, the April 7th memo was issued "to all of [Mechanical's] general sales agents . . . throughout the country" (emphasis in original). (Doc. #4). Mechanical asserts that the April 7th memo was issued "to its Agents and subagents in the state of Missouri." (Doc. #8).

The April 7th memo provided:

Please find attached a Vehicle Service Contract Application for Universal Underwriters. In this Application it clearly points out that the Obligor on the contract is the DEALER selling or leasing the vehicle and issuing the CONTRACT.

In other words if Universal Underwriters denies a claim they have left the DEALER standing alone to be sued by the customer. If for whatever reasons the Administration or claims side fails they have left the DEALER wide open for suits from the consumer.

Does the Dealer know this? How does the Dealer feel being put in this position? Why would the Dealer want this? Does this affect him with the Internal Revenue Service?

If you have Dealers in your area doing business with Universal Underwriters I would certainly point this out to them.

(Pl.'s Compl. Attach. A) (emphasis in original).

### A. *Kansas and Wisconsin Dealers*

Universal asserts that the April 7th memo, without the attached Vehicle Service Contract Application referenced in the memo, was obtained by automobile dealers in Kansas and Wisconsin. These dealers have contacted Universal to inquire about the veracity of the statements made by Mechanical in the

---

[1] Captioned as Defendants "John Does 1-50 (Agents of Mechanical Breakdown Protection, Inc.)" in this action.

memo. (Pl.'s Prelim. Inj. Hr'g Ex. 15-17). It is unclear who sent the April 7th memo to the Kansas and Wisconsin dealers.

Universal argues that Mechanical's statement that the dealer is the obligor on Universal's Vehicle Service Contracts according to Universal's Vehicle Service Contract Application is literally false with respect to dealers in Kansas and Wisconsin. (Prelim. Inj. Hr'g). All Vehicle Service Contract Applications used by Universal in Kansas and Wisconsin clearly provide in boldface type: "**The obligor of this CONTRACT is Universal Underwriters Service Corporation**." (Pl.'s Prelim. Inj. Hr'g Ex. 1, 3). Universal's Vehicle Service Contracts executed in Kansas and Wisconsin further support this assertion of obligation. (Pl.'s Prelim. Inj. Hr'g Ex. 2, 4).

### B.    *Missouri Dealers*

The Missouri dealers did not receive April 7th memo. Rather, they received a letter signed by Orr which included the same representations and content as the April 7th memo. (Pl.'s Prelim. Inj. Hr'g Ex. 10, 11). Attached to this letter was a copy of the Vehicle Service Contract Application used by Universal in Missouri and a copy of a newspaper article. Id.

Universal argues that Mechanical's representation that the dealer is the obligor under Universal's Vehicle Service Contracts is misleading with respect to dealers in Missouri. (Prelim. Inj. Hr'g). All Vehicle Service Contract Applications used by Universal in Missouri clearly provide in boldface type, "**The obligor of this CONTRACT is the dealer selling or leasing the vehicle and issuing the CONTRACT**." (Pl.'s Prelim. Inj. Hr'g Ex. 5). These applications further provide that the Vehicle Service Contract may be assigned:

4

> Furthermore, YOU acknowledge and agree that the liabilities and duties of the Seller on any vehicle service contract issued under this document may be assigned. If assigned, YOU hereby release the seller from all liabilities and duties thereunder.

(Pl.'s Prelim. Inj. Hr'g Ex. 5). Relying on this language permitting assignment, Universal argues that a Missouri dealer is not liable under a Vehicle Service Contract which has been assigned. Therefore, Universal asserts that Mechanical's blanket statement that the dealer is the obligor under Universal's Vehicle Service Contracts is misleading in cases where the dealer's liabilities and duties have been assigned.

Universal contends that it is Universal's practice in Missouri to accept assignment of the dealer's liabilities and duties under its Vehicle Service Contracts. (Prelim. Inj. Hr'g Test. of Scott McMillon). According to Universal, this practice is established in the Vehicle Service Contract Dealer Agreement wherein the dealer agrees to sell vehicle service contracts on Universal's behalf. (Pl.'s Prelim. Inj. Hr'g Ex. 7).[2] After the dealer agrees to sell Vehicle Service Contracts on Universal's behalf, the dealer is sent the Vehicle Service Contract Dealer Agreement accompanied by a "congratulatory letter." (Prelim. Inj. Hr'g Test. of Scott McMillon). In the congratulatory letter, Universal informs the dealer:

> Effective 10/29/2004, Universal Underwriters Service Corporation will accept assignment of all eligible Vehicle Service Contracts. The assignments will be effective upon receipt of the completed application and remittance from your dealership. Each customer will be notified of the assignment effective date when they receive their vehicle service contract booklet.

---

[2]Plaintiff's Preliminary Injunction Hearing Exhibit 7 is a group exhibit consisting of 28 Vehicle Service Contract Dealer Agreements between various Missouri automobile dealers and Universal. At the hearing, the parties focused on two specific agreements: Universal focused on the agreement between Mike Kaplan and Universal (U1-U13) and Mechanical focused on the agreement between Jimmy Michel and Universal (U127-U138). These agreements are substantively similar and will be referenced by the Court in this Order.

5

(Pl.'s Prelim. Inj. Hr'g Ex. 7 at U1).[3]  With respect to assignment, the Vehicle Service Contract Dealer Agreement provides:

> This agreement shall not be assignable by either party, except with the written consent of the other party.

(Pl.'s Prelim. Inj. Hr'g Ex. 7 at U8, U132).  An Addendum to the Vehicle Service Contract Dealer Agreement provides further language with respect to assignment:

> 1. PROGRAM ADMINISTRATION
>
>    A. **Administrator agrees:**
>       (e) **that at its option,** in lieu of the services described in (d), Administrator may take an assignment of all rights and an assumption of all liabilities of Dealer under the Service Contract.
>
> 16. TRANSFER OF SERVICE CONTRACTS
>
> **At Administrator's option**, **Administrator may elect to assume** (and Dealer agrees to assign) all obligations and rights of Dealer under a Service Contract at any time during the term of the Agreement, it being the parties' intention in such event to effect a novation of the Service Contract and not a delegation of performance.  **The assignment and assumption of a Service Contract shall automatically become effective upon receipt of the Dealer Remittance for the Service Contract and written notice by Administrator to Dealer and Contractholder.**  All rights of Dealer under any insurance policy shall also be automatically transferred to Administrator.  Dealer agrees to execute any documentation that Administrator may request to further evidence such assignment and assumption.
>
> Following an assignment of a Service Contract, Dealer agrees to perform on Administrator's behalf the repair and other services which the Administrator is required to provide the Customer under the assigned Service Contract. Dealer agrees to perform such services for Administrator at the same prices and on the same terms and conditions found in the insurance policy and this Agreement, it being the parties' intention that

---

[3] The language of the congratulatory letter set to Jimmy Michel by Universal is substantively similar except the effective date of Universal's acceptance of assignment is April 20, 2001. (Pl.'s Prelim. Inj. Hr'g Ex. 7 at U127).

6

Administrator's obligation to pay Dealer for repair and related services shall be limited to amounts for which Administrator may receive reimbursement under the insurance policy.

(Pl.'s Prelim. Inj. Hr'g Ex. 7 at U13, U138) (emphasis added).[4]

According to a plain meaning interpretation of these contract provisions, a Missouri dealer's liabilities and duties under Universal's Vehicle Service Contracts are assignable to Universal, but this assignment is neither mandatory nor automatic. The Vehicle Service Contract Dealer Agreement forbids assignment absent the written consent of the non-assigning party. Apparently by signing the Addendum the parties are consenting in writing to the assignment of the dealer's liabilities and duties to Universal. However, the Addendum sets forth certain prerequisites to assignment. Pursuant to the Addendum, for an assignment of the dealer's duties and liabilities under the Vehicle Service Contract to be effective Universal must: (a) receive the Dealer Remittance for the Service Contract and (b) provide written notice to the Dealer **and** the Contractholder of the assignment.[5]

Universal provides the Contractholder with written notice of the purported assignment in the Vehicle Service Contract which is mailed to the consumer upon approval of the consumer's Vehicle

---

[4]The Court notes that with respect to the contract between Mike Kaplan and Universal (U1-U13), the numbering in the Addendum does not accurately correspond to the numbering in the contract and Universal is referred to as "Company" in the contract and "Administrator" in the Addendum. (Prelim. Inj. Hr'g Test. of Scott McMillon). These typographical errors do not affect the substance of the Addendum or the contract. Id. These errors do not exist with respect to the contract between Jimmy Michel and Universal (U127-U138). Id.

[5]The Court notes that as a prerequisite to effective assignment the Addendum requires that Universal provide the dealer with written notice of assignment whereas this requirement is omitted in the congratulatory letter. Because the Vehicle Service Contract Dealer Agreement which governs the relationship between the Dealer and Universal provides, "This agreement supersedes all previous agreements whether written or oral between [Universal] and Dealer," the Court finds the language of the Addendum controlling. (Pl.'s Prelim. Inj. Hr'g Ex. 7 at U8, U133)

7

Service Contract Application. In Section I of the Vehicle Service Contract used by Universal in Missouri, under the heading "IMPORTANT ITEMS," the consumer is informed of the possibility of assignment:

> **ASSIGNMENT OF VEHICLE SERVICE CONTRACT**:
> WE may transfer this **CONTRACT** to the **ADMINISTRATOR** at any time during the first 90 days after the application is signed. Following assignment, **YOU** will continue to have the same rights and protection as before but the **ADMINISTRATOR** will be the party responsible on the **CONTRACT** rather than US. All references in the **CONTRACT** to **WE** or **US** will then refer to the **ADMINISTRATOR** directly. **OUR** liability on the **CONTRACT** will cease at the time of assignment, but WE will continue to be directly responsible for any problems that you may have arisen [sic] prior to assignment.[6]

(Pl.'s Prelim. Inj. Hr'g Ex. 6). The contract further provides in the "Special Provisions" section:

> **IN ACCORDANCE WITH THE ASSIGNMENT PROVISION OF YOUR CONTRACT YOU ARE HEREBY NOTIFIED OF ASSIGNMENT TO UNIVERSAL UNDERWRITERS SERVICE CORPORATION EFFECTIVE [contract effective date].**

(Pl.'s Prelim. Inj. Hr'g Ex. 6). The Court finds that this provides the Contractholder with sufficient written notice of the assignment of the dealer's liabilities and duties to Universal.

However, Universal presented inadequate evidence of the written notice that Universal is required to provide the dealer pursuant to the Addendum for the assignment to be effective. Scott McMillon, Universal's key witness in the preliminary injunction hearing, testified that the congratulatory letter sent to the dealers with the Vehicle Service Contract Dealer Agreement provided the dealers with written notice of the assignment of the Vehicle Service Contracts. (Prelim. Inj. Hr'g Test. of Scott McMillon). However, the congratulatory letter is received by the dealer at the commencement of the relationship between

---

[6] "WE/US/OUR" refers to the dealer selling or leasing the vehicle and issuing the Contract. "Administrator" refers to Universal Underwriters Service Corporation. (Pl.'s Prelim. Inj. Hr'g Ex. 6 at U721).

8

Universal and the dealer - prior to the dealer selling any Vehicle Service Contracts to consumers. As such, the Court finds that this congratulatory letter fails to provide effective notice of the assignment of the dealer's liabilities and duties to Universal on Vehicle Service Contracts which have not yet been executed. Although Universal purports to accept assignment of the dealer's liabilities and duties under the Vehicle Service Contracts, the assignments are not effective pursuant to the Addendum as Universal has failed to provide the dealers with adequate written notice of the assignment.

Assuming, arguendo, that Universal has provided the dealer with adequate written notice of the assignment, other language in the Vehicle Service Contract and the congratulatory letter indicates that the assignment is neither mandatory nor automatic. According to the Vehicle Service Contract, "assignment of the vehicle service contract may occur at any time during the first ninety (90) days after the application is signed." (Pl.'s Prelim. Inj. Hr'g Ex. 6 at U720). Therefore, there is a time period from the point at which the application is signed until the assignment becomes effective that the dealer is the obligor on the contract as stated in the Vehicle Service Contract Application.

Furthermore, the congratulatory letter states that Universal "will accept assignment of all *eligible* Vehicle Service Contracts." (emphasis added) (Pl.'s Prelim. Inj. Hr'g Ex. 6 at U1, U127). However, Universal presented no evidence of the criteria it applied to determine whether a Vehicle Service Contract is "eligible" for assignment. Similarly, the Addendum to the Vehicle Service Contract Dealer Agreement states, "[Universal] agrees that *at its option* . . . [Universal] may take an assignment . . ." and "*At [Universal's] option*, [Universal] may elect to assume . . . all obligations and rights of Dealer under a Service Contract . . ." (emphasis added) (Pl.'s Prelim. Ing. Hr'g Ex. 7 at U13, U138). Universal presented no evidence of the circumstances under which it will exercise its option to accept assignment of the dealer's

9

duties and liabilities. Therefore, it is possible that the dealer would remain the obligor on Vehicle Service Contracts which are ineligible for assignment or which Universal chooses not to exercise its option to accept assignment.

Universal filed suit against Mechanical asserting claims for violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Injurious Falsehood/Product Disparagement, and Tortious Interference with Business Expectancy. (Doc. #1). Universal further filed this Motion for Preliminary Injunction. (Doc. #3). In this Motion, Universal argues that Mechanical should be enjoined from informing Kansas and Wisconsin dealers that they are the obligors under Universal's Vehicle Service Contracts because the Vehicle Service Contract Applications used in these States clearly provide that Universal is the obligor. Universal further claims that Mechanical is misleading Missouri dealers by informing them that they are liable under Universal's Vehicle Service Contracts because the Missouri dealers' duties and liabilities are generally assigned to Universal. Mechanical argues that Universal is not entitled to a preliminary injunction because the April 7th memo accurately describes the Universal Vehicle Service Contract Application attached to it and Universal is unlikely to succeed on the merits of its Lanham Act claim. (Doc. #8). Universal and Mechanical argued the merits of this Motion for a Preliminary Injunction in a hearing held on June 2, 2005.

**II.     Standard**

Universal seeks this preliminary injunction pursuant to Fed. R. Civ. P. 65. The Court weighs the following factors when determining whether a preliminary injunction should be granted: (1) whether the movant will suffer irreparable harm if the order is not issued; (2) whether the harm to be suffered by the movant if the order is not entered outweighs any injury that may be suffered by the party subject to the

10

order; (3) whether the movant is likely to succeed on the merits of his claim; and (4) whether the public interest weighs in favor of issuing the order. Dataphase Systems, Inc. v. D L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981). After careful consideration of these factors and the written and oral facts and arguments presented by Universal and Mechanical, this Court finds that a preliminary injunction is necessary to prevent Mechanical from disseminating literally false statements about the liability of Kansas and Wisconsin dealers under Universal's Vehicle Service Contracts. However, this Court declines to enjoin Mechanical from reminding Missouri dealers that they are liable under Universal's Vehicle Service Contracts as the application clearly states that the dealer is the obligor under Universal's Vehicle Service Contracts and assignment is neither mandatory nor automatic.

**III.     Analysis**

First, this Court finds that Universal will suffer irreparable harm to its interests in Kansas and Wisconsin if a preliminary injunction is not issued. "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury" because "[h]arm to reputation and goodwill is impossible to quantify in terms of dollars." Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 804 (8th Cir. 2003). If Mechanical is not enjoined from disseminating misleading statements about the liability of automobile dealers under Universal's Vehicle Service Contracts in Kansas and Wisconsin, Universal will suffer permanent damage to its reputation and goodwill in these states as automobile dealers will be reluctant to sell Universal's Vehicle Service Contracts. Furthermore, Universal risks loss to its market share, which may not be redressed by a legal or equitable remedy, if Mechanical continues to misrepresent the automobile dealer's liability under Universal's Vehicle Service Contracts in Kansas and Wisconsin.

11

Second, this Court finds that the harm suffered by Universal in Kansas and Wisconsin if a preliminary injunction is not granted is outweighed by any injury that Mechanical may suffer upon the granting of the preliminary injunction. Granting Universal's requested preliminary injunction with respect to Mechanical's statements about the liability of dealers in Kansas and Wisconsin will result in virtually no injury to Mechanical. The only damage to Mechanical is that it will have to sell its Vehicle Service Contracts on the merits of the contract itself rather than by making literally false statements about the liability of Kansas and Wisconsin dealers under Universal's Vehicle Service Contracts executed in those States.

Third, this Court finds that a balance of the equities entitles Universal to a preliminary injunction enjoining Mechanical from disseminating literally false statements about Universal's vehicle service contracts in Kansas and Wisconsin. The facts presented by Universal are sufficient to support plausible claims for a violation of § 43(a) of the Lanham Act, injurious falsehood/product disparagement, and tortious interference where Universal is characterized as the obligor on the face of the Vehicle Service Contract Application. It is not necessary that the Court determine with mathematical certitude the probability that Universal will succeed on the merits. Dataphase, 640 F.2d at 113. Rather, "where the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined, the equitable nature of the proceeding mandates that the Court's approach be flexible." Id. In this case, the Court finds it unnecessary to engage in an exhaustive analysis of the likelihood of Universal's success on the merits of each of its three claims as "the balance of other factors tips decidedly towards" the granting of a preliminary injunction. See Id.

Finally, this Court finds that the public interest favors granting the relief Universal requests. "[P]ublic policy favors truth in advertising." Charter Communications, Inc. v. Southwestern Bell Tel. Co., 202 F.Supp.2d 918, 930 (E.D. Mo. 2001). Rather, the public interest is aggrieved by misleading statements made by competitors seeking to gain a market advantage.

At this time the Court does not find that the equities weigh in favor of restraining Mechanical from notifying Missouri dealers that they are the obligors on Universal's Vehicle Service Contracts. The Vehicle Service Contract Application used by Universal in Missouri clearly states that the dealer is the obligor on the Vehicle Service Contract. Although the Vehicle Service Contracts executed by Universal in Missouri also contain language which permits the dealer to assign its liabilities and duties, this assignment is neither mandatory nor automatic. The Addendum to the Vehicle Service Contract Dealer Agreement permits assignment of the duties and liabilities of the dealer to Universal; however, it also attaches certain prerequisites to assignment. Arguably, one of these prerequisites has not been satisfied - that Universal provide the dealer with written notice of the assignment - thereby rendering assignment ineffective. Furthermore, language in the Vehicle Service Contract and the congratulatory letter indicates that assignment is elective, at Universal's option, for "eligible" contracts. Finally, the dealer remains the obligor on Universal's Vehicle Service Contract until assignment becomes effective. As the assignment of the dealer's duties and liabilities under Universal's Vehicle Service Contract is not compulsory, Mechanical's statement that the dealer is the obligor is not misleading as the obligor on the contract is the dealer, absent effective permissive assignment. Accordingly, the Court does not find that Mechanical should be enjoined from reminding Missouri dealers that they are the obligors under Universal's Vehicle Service Contracts as

13

Universal's Vehicle Service Contract Application clearly states that the dealer is the obligor and assignment of the dealer's obligation is merely permissible.

## **CONCLUSION**

Based on the foregoing analysis, the Court HEREBY ORDERS that a Preliminary Injunction shall issue immediately enjoining Defendants Mechanical, James W. Orr, Jr., Mark Muller, and John Does 1-50 (Agents of Mechanical Breakdown Protection, Inc.) and their partners, agents, affiliates, individually and jointly from engaging in the following conduct in KANSAS or WISCONSIN:

- publishing, disseminating, or causing the publication or dissemination of the statements contained in the memorandum issued by Mechanical, Orr, and Muller on April 7, 2005 or any similar false statements asserting that automobile dealers selling Universal's vehicle service contracts in Kansas or Wisconsin are the obligors solely responsible for consumer lawsuits regarding Universal's vehicle service contracts or that Kansas or Wisconsin automobile dealers selling Universal's vehicle service contracts are at risk for consumer lawsuits under the language of the Kansas or Wisconsin contracts;

**IT IS SO ORDERED**.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: June 14, 2005